# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JANET WIERZBA-WYSONG, | : | Case No. 3:12-cv-15 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

## REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THE CASE BE CLOSED

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g) and § 1383(c).  At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Janet Wierzba-Wysong ("Plaintiff") not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 13), Plaintiff's Reply (doc. 14), the administrative record[2] (doc. 6), and the record as a whole.

### I. BACKGROUND

#### A. Procedural History

Plaintiff filed applications for DIB and SSI in November 2006, asserting that she has been under a "disability" since December 6, 2001. *See* PageID 278-83, 286-88.  Subsequently,

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.
[2]Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

she amended her alleged disability onset date to November 30, 2005. PageID 284. Plaintiff claims she is disabled due to bipolar disorder, depression, degenerative disc disease, spinal stenosis, a bulging disc in the L5 region, and tendon/nerve damage to her arms and hands. PageID 199.

Following initial administrative denial of her applications, Plaintiff received a hearing before ALJ Thomas McNichols in February 2010. PageID 83-129. Near the conclusion of the hearing, ALJ McNichols determined additional consultative evaluations were needed. PageID 127-28. A second hearing was held in June 2010, where Mary Buban, M.D. testified as the Medical Expert ("ME"), and Brian Womer testified as the Vocational Expert ("VE"). PageID 130-76. On July 23, 2010, ALJ McNichols issued a written decision, concluding that Plaintiff was not "disabled." PageID 60-73.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011;

2. The claimant has not engaged in substantial gainful activity since November 30, 2005, the alleged disability onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: 1) chronic low back pain; 2) chronic right upper extremity pain; and 3) bipolar and anxiety disorders (20 CFR §§ 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform a

   modified range of light work[3] as defined in as defined in 20 CFR 404.1567(c) and 416.967(c). In particular, this RFC features: 1) occasional lifting up to 50 pounds and occasional carrying of up to 20 pounds; 2) standing and/or walking no longer than four hours of an eight-hour work day; 3) no more than frequent work above shoulder level on the right side; 4) no more than frequent use of foot controls; 5) occasional stooping, kneeling, crouching, crawling, balancing, or climbing of stairs; 6) no climbing of ropes, ladders, or scaffolds; 7) occasional handling on the right; 8) no more than frequent exposure to temperature extremes, humidity, or irritants; 9) no more than frequent pushing or pulling; 10) no exposure to hazards; 11) no more than frequent exposure to wetness and vibrations; 12) low stress jobs with no production quotas and no fast-paced work; and 13) simple one- or two-step tasks requiring little, if any, concentration.

6. The claimant is unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965);

7. The claimant was born [in] 1967, was 38 years old, and is defined as a "younger individual" on the alleged disability onset date (20 CFR §§ 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering her age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)); and

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2005, through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

PageID 60-72 (footnote added).

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 52-54. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on January 17, 2012. Doc. 2.

### B. Plaintiff's Hearing Testimony

Plaintiff testified that she lives in a house with her husband, stepson, and four year old daughter. PageID 88. She has an Associate's Degree in business administration, but has not worked since she took maternity leave in 2005. PageID 89, 91-92.

Plaintiff testified that she started experiencing back problems towards the end of her pregnancy. PageID 105. She has never had back surgery, and has not been treated by an orthopedic surgeon. PageID 94, 136. Treatment for her back has consisted of steroidal injections, physical therapy, and pain medication. PageID 93-95, 104-105.

Plaintiff sees a mental health therapist once per week, and a psychiatrist for medication management once per month. PageID 140. Therapy and medication have helped her depression, and previously-reported inability to sleep. *Id.*

Plaintiff testified that she has a driver's license, and drives approximately three or four times per week. PageID 89. She estimated that she can climb a flight of stairs; walk less than one block; stand for 15-20 minutes; and sit for 15-20 minutes. PageID 109-111. She testified that her pain management physician limited her to lifting no more than ten pounds. PageID 111.

Plaintiff shares household responsibilities and chores with her husband. PageID 112-13. She spends a typical day preparing meals, taking care of her four year-old daughter, playing games on the computer, browsing the internet and social media websites, and watching television. PageID 119-20, 148. At the first hearing, Plaintiff testified that she attended church

every Sunday; at the second hearing, she stated that she stopped attending church. PageID 113, 146-47. She visits with her mother and father once per week, and is able to go grocery shopping. PageID 113.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3)[4]; *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found the claimant disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

---

[4]The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

### B. "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in her Statement of Errors, the Commissioner's memorandum in opposition, and the administrative decision, *see* doc. 8 at PageID 1348-57; doc. 13 at PageID 1381-87; PageID 62-71, and the Court will not repeat them here.  Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff argues that the ALJ's non-disability finding should be reversed on three grounds:

1. The ALJ erred by giving only little weight to the opinions of Plaintiff's treating family physician, Cynthia Kallet, M.D., and treating psychiatrist Darshan Singh, M.D.;

2. The ALJ's hypothetical question to the VE was improper under Social Security regulations; and

3. The ALJ's finding that Plaintiff was not credible was erroneous.

Doc. 8 at PageID 1358-66.  For the reasons that follow, the Court finds none of Plaintiff's allegations of error to be meritorious.

### A. Substantial Evidence Supports the ALJ's Decision to Not Give Controlling or Deferential Weight to the Opinions of Drs. Kallet and Singh

As summarized in the parties' briefs, Drs. Kallet and Singh both opine that Plaintiff's mental and physical impairments are severe enough to preclude her from being able to perform any exertional level of work.

Dr. Kallet, for instance, opined in 2007 that Plaintiff is unemployable; is limited to 15 minutes of standing/walking and sitting in an 8-hour workday; cannot lift or carry any amount of weight; and is extremely limited in her ability to push/pull, bend, reach, handle, and repetitively use her feet.  PageID 717-18.  Dr. Kallet duplicated this assessment in May 2008, *see* PageID 1250, and October 2008, with the exception that the latter opinion did not address Plaintiff's

capacity to lift. PageID 1251-52. In November 2008, Dr. Kallet opined that Plaintiff can sit/stand for up to two hours and walk for up to two hours in an 8-hour workday; can engage in simple grasping, pushing and pulling, and fine manipulation; and is incapable of part- or full-time employment. PageID 1253. In July 2010, Dr. Kallet responded to interrogatories and opined that Plaintiff, on account of her "anxiety/depression," "chronic back pain/lumbar degenerative disk disease," and hypothyroidism, is unable to work a full day without physical pain; is not dependable because of her pain and anxiety/depression; and is incapable of performing even sedentary work. PageID 1330-36.

Dr. Singh, along with his colleagues at Advance Therapeutic Services ("ATS") -- therapist Sharon Walk, and Plaintiff's previous psychiatrist, Mariella Toca, M.D. -- opined that Plaintiff suffers from Listing-level mental impairments. *See*, *e.g.*, PageID 544-45, 1151-58. For instance, in August 2008, Ms. Walk completed interrogatories -- which were subsequently signed by Dr. Singh -- in which she opined that Plaintiff does not have the ability to: be prompt or regular in attendance; respond appropriately to supervision, co-workers, and customary work pressures; withstand the pressure of normal standards of work productivity; sustain attention or concentration to meet normal standards of work productivity; understand, remember, or carry out simple work instructions without close supervision; behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; maintain concentration or attention for at least two hours; perform activities within a schedule or maintain regular attendance; respond appropriately to changes in a routine work setting; or get along with co-workers. PageID 1022-30. Ms. Walk's opinion was consistent with her June 2008 mental RFC assessment -- a document not signed by Dr. Singh until February 2009, *see* PageID 1158 -- in which she opined that Plaintiff is moderately limited in her activities of daily living; extremely

limited in maintaining social functioning; markedly limited in her concentration, persistence, and pace; and had a history of one or two episodes of decompensation. PageID 1151-58.

The ALJ accorded "little weight" to these opinions, finding them unsupported by objective medical evidence and inconsistent with the record. Instead of giving any of the aforementioned opinions controlling or deferential weight, he gave great weight to the opinions of Dr. Buban and consultative examiner Aivars Vitols, D.O. Plaintiff argues that the ALJ's analysis in this regard constitutes reversible error.

The opinions of treating physicians are typically entitled to controlling weight. *Cruse v. Comm'r of Soc. Sec.*, 502 F. 3d 532, 540 (6th Cir. 2007). To that end, under the "treating physician rule," the ALJ is required to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).

Nevertheless, a treating physician's opinion is to be given controlling weight only if it is well-supported by medically acceptable clinical and laboratory techniques, and is not inconsistent with the other evidence of record. *Id.*; *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). Accordingly, an ALJ may properly reject a treating physician's opinion that does not meet these standards. *See* 20 C.F.R. § 404.1527(d)(2).

When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the

nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician's opinion, based on the evidence in the record, and these reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id*. (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 SSR LEXIS 9, at *5). The ALJ's failure to adequately explain the reasons for the weight given to a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. at 407.

Furthermore, a treating source's opinion as to a claimant's employability is a legal conclusion, and not a "medical source opinion," as defined by Social Security regulations, which the ALJ must accept. *See* 20 C.F.R. §§ 404.1527(c)–(d). Social Security regulations mandate that the question -- of whether or not a claimant is disabled -- is an administrative issue reserved solely to the province of the Commissioner. *Id*.; *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). Thus, the ALJ need not give either controlling or deferential weight to an opinion that a claimant is "disabled." *See* 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will find that you are disabled"); *see also* Soc. Sec. Ruling 96-5p, 1996 SSR LEXIS 2, at *2 (July 2, 1996) ("Whether an individual is 'disabled' under the Act. The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner").

The ALJ's analysis regarding the opinions of Dr. Kallet, Dr. Singh, Ms. Walk, and Dr. Toca is well-supported by substantial evidence. The Court finds the ALJ committed no error in this regard.

-10-

The ALJ adequately discussed how Dr. Kallet's conclusions are unsupported by detailed medical findings, objective medical data, the MRIs of record, the opinions of medical consultants Jeffrey Vasiloff, M.D. and Gerald Klyop, M.D., and the opinion of Dr. Vitols. Dr. Vitols, an orthopedic specialist, examined Plaintiff at the ALJ's request and concluded that Plaintiff could lift up to 20 pounds frequently; lift 50 pounds occasionally; sit, stand, or walk for one hour without interruption; sit for 4 hours in an 8-hour work day; and stand or walk for 2 total hours in an 8-hour work day. *See* PageID 69-70, 1311-15. In addition, the ALJ properly considered Dr. Kallet's specialization as a family physician when weighing it with the other evidence of record. *See* 20 C.F.R. § 404.1527(d). Besides being supported by the opinions of Drs. Vasiloff and Klyop, Dr. Vitols' opinion -- that Plaintiff is physically able to perform a limited range of light work -- is supported by other medical evidence of record including the report of David Kirshman, M.D., who provided a neurological examination in September 2006 and found Plaintiff not to be a surgical candidate as "[h]er MRI findings are rather mild overall and no course of conservative management has been attempted thus far." PageID 485. In addition to noting that Plaintiff's back pain had only been treated with ibuprofen between October 2005 and September 2006, Dr. Kirshman additionally noted, "I feel she would benefit from a course of physical therapy and I have prescribed this for her…. If her symptoms fail to respond to conservative management, then we may be willing to reevaluate her for surgical treatment in the future." PageID 484-85. The record shows Plaintiff chose to stop going to physical therapy in 2009. *See* PageID 93. The record also shows she has never had back surgery. *Id*.

The ALJ's decision to adopt the opinion of Dr. Buban over the opinions of Dr. Singh and his colleagues at ATS is likewise well-supported. On this point the ALJ found:

-11-

> [the] assessments by treating personnel at ATS stand in stark contrast to progress notes which typically show that the claimant's mental status is near normal with goal-directed thoughts, no delusions or hallucinations, no suicide ideation or plan, normal appearance and behavior, and sometimes an euthymic mood. Further, the claimant generally appears to have been improved or benefiting from her therapy (as was commented on and emphasized by the [ME]). As the functional assessments of the above treating personnel of ATS are poorly supported clinically and inconsistent with internal records of ATS as well as other evidence of record, the opinions of these sources are not given controlling or deferential weight (that is, they are given little weight).

PageID 70-71.

In challenging the ALJ's finding regarding Dr. Singh, Plaintiff has given only cursory attention to the requirement that a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record before it is entitled to controlling weight. *Walters*, 127 F.3d at 530 (quoting 20 C.F.R. § 404.1527(d)(2)). The record includes very few treatment notes from Drs. Singh and Toca; the overwhelming majority of the ATS treatment notes are authored by Ms. Walk. However, Ms. Walk's notes generally include very few objective findings beyond documenting an "angry" or occasionally "anxious" mood/affect, and mostly show improved progress, no delusions, no ideation or pain, and no perceptual abnormalities. *See* PageID 1051-52, 1054-56, 1058-59, 1279-87, 1289-93, 1295-97, 1301-10.

The ALJ did not merely reject the opinions of Plaintiff's treating sources in favor of Dr. Buban's opinion; rather, he used Dr. Buban as a resource to evaluate the degree to which the treating source opinions were supported by objective medical evidence. *See* PageID 69-70. Relying on Dr. Buban's testimony, the ALJ reasonably concluded that the medical record did not support Dr. Singh's and Ms. Walk's conclusion that Plaintiff's impairments were of Listing-level severity. *Id*.

Dr. Buban testified that the state psychologists who reviewed the record in 2007 had concluded that Plaintiff's activities of daily living were extensive and supported a finding that she had a mild limitation in this area. *See* PageID 69-70, 158-62, 487-504. These activities of daily living included caring for her baby and teenage children, going regularly to doctors' appointments, straightening up at home, driving independently, shopping for groceries, socializing with family, attending church, following written instructions, and getting along with authority. *Id.* She also opined that the record supported only a finding that Plaintiff was moderately limited in social functioning. PageID 158-62. In support of this conclusion, Dr. Buban noted that Plaintiff had virtually no problem dealing with or relating to her many doctors and therapists, and the focus of her social functioning limitations was her unusually tempestuous relationship with her husband[5] rather than her ability to get along with others. *Id*. With respect to concentration, persistence, or pace, Dr. Buban opined that Plaintiff was moderately limited, with greater limitation when she was stressed. *Id*. She noted again, however, that this increased limitation was exacerbated by her relationship with her husband, suggesting that it would be less pronounced in a work environment. *Id*. She also opined that the record supported the conclusion that Plaintiff's regular therapy has resulted in an improvement in her ability to understand her impulses and develop coping strategies. *Id*. Although Ms. Walk and Dr. Singh cited one or two episodes of decompensation, Dr. Buban noted that Plaintiff visited the hospital several times (including times she complained of an attempted overdose), but that records show that she was infrequently admitted (and had no stay of extended duration), constantly denied suicidal intent, and that she appeared to be seeking attention. As a result, she recommended

---

[5]Indeed, Ms. Walk's treatment notes show Plaintiff's marital relationship to be the primary topic of most therapy sessions. *See* PageID 1051-52, 1054-56, 1058-59, 1279-87, 1289-93, 1295-97, 1301-10.

limiting Plaintiff only to no production quotas or fast-paced work as a result of her problems with concentration, persistence, or pace. *Id*.

To the extent Plaintiff argues that the ALJ erred because evidence exists in the record which supports a finding of disability, the Court finds such an argument unavailing. *See Buxton*, 246 F.3d at 772. It is the Commissioner's function to resolve conflicts in the medical evidence, *see Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987), and that is exactly what the ALJ reasonably did here. The ALJ properly considered all of the evidence of record, including the combination of Plaintiff's impairments, and acted well within the permissible "zone of choice" in his decision to accord less than controlling weight to her treating physicians. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The ALJ, not the Court, is the finder of fact. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ reasonably undertook that role here. *Id*. So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g); *Richardson*, 402 U.S. at 401. Where, as here, there is substantial evidence supporting the ALJ's resolution of the disputed facts, the Court must affirm the ALJ even if the Court might have resolved those disputed facts in Plaintiff's favor had it been the trier of fact. *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987).

**B. Substantial Evidence Supports the ALJ's Credibility Assessment of Plaintiff**

The Court has considered Plaintiff's challenge to the ALJ's credibility assessment, but finds it to be unmeritorious. An ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded. *Casey*, 987 F.2d at 1234. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [a claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 476 (6th Cir. 2003) (brackets added).   Moreover, the ALJ has the opportunity to observe the demeanor of a witness while testifying -- not the Court.  *See id.*

Here, the ALJ stated that he had considered Plaintiff's subjective complaints in accordance with the requirements of Social Security Ruling 96-7p and 20 C.F.R. § 404.1529, and set forth the various factors that he had considered in his credibility assessment, including specific citations to medical records and medical source opinions, objective clinical findings, treatment regimen, medication use, and activities.   PageID 69-71.   These factors were sufficiently detailed and supported the ALJ's assessment of Plaintiff's credibility. For example, the ALJ considered evidence of work history and reasons for stopping work, which at times were inconsistent. *Id*.  Further, Plaintiff also claimed to be very limited in her daily activities, but the record shows that she engaged in multiple regular daily activities (including caring for an active toddler) and Dr. Vitols report that she was independent in the activities of daily living.  *Id*.; *see also* 20 C.F.R. § 404.1529(c)(3)(I); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

Accordingly, the ALJ reasonably concluded that Plaintiff's allegations of disability were not fully credible, and his assessment is supported by substantial evidence.

### C.  The ALJ Committed No Error at Step Five

Plaintiff argues that the ALJ committed reversible error at Step Five, claiming "[t]he [VE]'s finding that Plaintiff could perform jobs with little, if any, concentration is not in accordance with the [Commissioner]'s regulations which acknowledges that ALL jobs require an ability to concentrate."  Doc. 8 at PageID 1359 (emphasis in original).  Plaintiff's argument, however, is based upon a misstatement of the ALJ's RFC finding.

The ALJ reasonably determined that Plaintiff retained the RFC for light work with the additional limitations to "low stress jobs with no production quotas and no fast-paced work" and

-15-

"simple one- or two-step tasks requiring little, if any, concentration." PageID 68-69.  The VE's testimony confirms that jobs exist in the regional economy exist which accommodate Plaintiff's RFC.  *See* PageID 165-71.  The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).  Similarly, Ruling 96-9p states that unskilled work generally requires "understanding, remembering and carrying out simple instructions" as well as making "simple work-related decisions." SSR 96-9p, 1996 SSR LEXIS 6, at *26 (July 2, 1996).  An ALJ may rely on the opinions of a vocational expert premised on an accurate portrayal of the claimant's impairments.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).  That is just what occurred here.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds fault with all of Plaintiff's assignments of error.  The ALJ's decision is found supported by substantial evidence, and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

January 30, 2013                                      s/Michael J.  Newman
                                                      United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).